# In the United States Court of Federal Claims

No. 19-53T

(Filed:  October 28, 2020)

|  |  |  |
|---|---|---|
| **GEORGE N. GAYNOR,** | ) | Tax refund claim; I.R.C. § 7422(a); I.R.C. § 6038; payment in full; penalties; administrative refund claim; notice of disallowance; six-month waiting period; IRS Form 5471; RCFC 12(b)(1). |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

*Michael Cavalier Durney*, Law Offices of Michael C. Durney, Washington, DC, for plaintiff.

*Miranda Bureau*, United States Department of Justice, Tax Division, Washington, DC, for defendant.  With her on the briefs were *Richard E. Zuckerman*, Principal Deputy Assistant Attorney General, *David I. Pincus*, Chief, Court of Federal Claims Section, *G. Robson Stewart*, Assistant Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, DC.

## OPINION AND ORDER

**SOLOMSON, Judge.**

Plaintiff, Mr. George N. Gaynor, seeks the refund of a portion of civil penalties that the Internal Revenue Service ("IRS") assessed against him for his failure to comply with reporting obligations related to his interests in certain foreign corporations.  Such claims, when properly filed, are within this Court's tax refund jurisdiction, pursuant to the Tucker Act, 28 U.S.C. § 1491(a), and the Internal Revenue Code ("I.R.C.") § 7422(a).[1] *See United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 4 (2008) ("A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government . . . in the United States Court of Federal Claims.").

---

[1] The Internal Revenue Code is Title 26 of the United States Code.

To date, Mr. Gaynor has never paid in full the penalties assessed against him for the years 2002 through 2009, or for the years 2011 through 2015.  Mr. Gaynor *has* paid in full the penalties assessed against him for 2010 and has sought a refund from the IRS for that full payment.  But because Mr. Gaynor only paid his 2010 penalties *after* filing his initial Complaint ("Compl."), ECF No. 1 – albeit before filing his First Amended Complaint ("FAC"), ECF No. 9-1 – Mr. Gaynor's payment in full and accompanying refund request for the 2010 penalties are insufficient to confer jurisdiction upon this Court to consider Mr. Gaynor's FAC even for to the 2010 sums at issue.

Moreover, as the Court details *infra*, even with respect to the 2010 penalties, Mr. Gaynor failed to satisfy yet additional jurisdictional prerequisites.  In particular, because Mr. Gaynor never received a notice of disallowance from the IRS for his claimed 2010 refund, he was required to wait six months after filing a refund claim with the IRS before initiating his suit.  Thus, Mr. Gaynor first filed the instant action prior to having satisfied *any* of the jurisdictional prerequisites for *any* year (including 2010), and he may not circumvent the mandatory six-month waiting period for the 2010-related claims via the FAC or by having that waiting period lapse while the FAC is pending.  Although more than six months had passed from the time Mr. Gaynor filed his initial Complaint to the time Mr. Gaynor filed his FAC, such passage of time cannot be used to satisfy a statutory waiting period.  *See Black v. Secretary of Health and Human Services,* 93 F.3d 781, 790 (Fed. Cir. 1996); *GAF Bldg. Materials Corp v. Elk Corp. of Dallas,* 90 F.3d 479 (Fed. Cir. 1996).  As such, even with respect to the 2010 penalties, Mr. Gaynor has not satisfied this Court's tax refund jurisdictional prerequisites.

Accordingly, and for the additional reasons explained *infra*, the government's motion is **GRANTED,** and Mr. Gaynor's FAC is **DISMISSED** pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC").

## I.    FACTUAL BACKGROUND[2]

The IRS assessed $260,000 in civil penalties against Mr. Gaynor due to his failure to file IRS Form 5471 ("Form 5471").  Mr. Gaynor specifically claims he is entitled to a refund for $23,600 in such penalties paid to the IRS.  Mr. Gaynor further seeks a declaration that all penalties assessed against him were "unlawful," and that the penalties assessed for the years 2002–2005 were improper due to the applicable statute of limitations contained in I.R.C. § 6038.  FAC ¶ 20-32.

Mr. Gaynor previously assisted in managing his father's investments, which included, among other assets, a Swiss investment account managed by Aquila & Co., AG, in Zurich, Switzerland ("Aquila").  FAC ¶¶ a-e.  In the late 1990s, Mr. Gaynor's father requested that Mr. Gaynor begin to visit Zurich twice a year to check on the

---

[2] The Court has derived this fact summary from the allegations in Mr. Gaynor's FAC.

Aquila investment account, as Mr. Gaynor's father no longer felt up to traveling to Switzerland himself due to his deteriorating health and advanced age.  FAC ¶ h.  Mr. Gaynor agreed and began traveling to Zurich at his own expense.  *Id.* ¶ i.

In October of 2000 – to pay for Mr. Gaynor's business trips to Switzerland – Mr. Gaynor's father created Sonoside Consulting, Inc. ("Sonoside").  FAC ¶¶ j-k.  Sonoside is a Panamanian corporation for which Mr. Gaynor was named as a beneficial owner.  *Id.*  A few years later, in 2004, Sonoside transferred its control and management to Centapriv Zurich, AG, ("Centapriv") through a management agreement.  *Id.*

As alleged in the FAC, Mr. Gaynor was not aware of Sonoside's transfer to Centapriv or even Sonoside's existence altogether until Aquila, the Swiss investment manager of Sonoside, so informed Mr. Gaynor.  *Id.* ¶ l.  Mr. Gaynor alleges that Aquila never advised him that he possessed any IRS reporting responsibilities with regard to Sonoside.  *Id.*  Following Sonoside's formation, Centrapriv formed a separate corporation, owned and funded by Sonoside, called Runcar Limited ("Runcar").  *Id.* ¶ m.  Centrapriv advised Mr. Gaynor that Runcar was created as a separate entity, based in Zug, Switzerland, for the purpose of licensing an automobile which was to be driven by Mr. Gaynor while he was in Switzerland tending to his father's investments.  *Id.* ¶ m.  Mr. Gaynor alleges that "[a]s was the case with Sonoside, Plaintiff was assured by Centrapriv that Runcar was a Swiss corporation as to which Plaintiff had no [IRS] reporting responsibilities.  *Id.* ¶ n.

Sometime in 2010, Mr. Gaynor learned that there likely were IRS filing requirements for corporate-owned foreign bank accounts.  FAC ¶ r.  Following that, in October of 2011, an employee of Centrapriv took Mr. Gaynor to meet with Steven Kraft, an American certified public accountant ("CPA") who worked in Zurich.  *Id.* ¶ s.  Mr. Gaynor maintains that Mr. Kraft first advised Mr. Gaynor that he had IRS reporting responsibilities for the Swiss bank accounts.  *Id.* ¶ t.  Mr. Gaynor alleges, however, that at that point – even after learning of IRS reporting requirements for the Swiss bank accounts – Mr. Gaynor still was unaware that he possessed separate reporting responsibilities for both Sonoside and Runcar.  *Id.*

Several years later, Mr. Gaynor received a notice from the IRS captioned "Failure to File Form 5471" for Sonoside (the "Sonoside Failure Notice"), dated May 8, 2017.[3]  FAC ¶ v.  Mr. Gaynor maintains that it was not until he received the Sonoside Failure Notice that he learned of a Form 5471 filing responsibility regarding Sonoside.  *Id.*  Furthermore, because the IRS did not mention Runcar in the Sonoside Failure Notice, Mr. Gaynor believed that he was not required to separately file a Form 5471 for Runcar.  FAC ¶ v.; *see also id.* ¶ ff ("At no time did Plaintiff ever knowingly or intentionally

---

[3] The Form 5471 requirements and its significance are addressed in greater detail, *infra* IV.B.

disregard any legal obligation with respect to either Sonoside or Runcar.").[4]  On July 26, 2017, Mr. Gaynor transmitted Form 5471 for Sonoside to the IRS for the years 2004 through 2015, accompanied by a Statement of Reasonable Cause, explaining his failure to file the forms in a timely manner.  *Id.* ¶ w.

Mr. Gaynor then received a notice from the IRS which was entitled "Failure to File Form 5471" for Runcar ("Runcar Failure Notice"), dated September 12, 2017.  FAC ¶ x.  Just as Mr. Gaynor maintains with regard to Sonoside, Mr. Gaynor alleges that he first became aware that he *also* was required to file Form 5471 for Runcar when he received the Runcar Failure Notice.  *Id.*  On December 5, 2017, Mr. Gaynor transmitted Form 5471 for Runcar covering the years 2002 through 2015, once again accompanied by a Statement of Reasonable Cause.  *Id.* ¶ y.

The IRS responded to Mr. Gaynor in a letter dated June 6, 2018, advising Mr. Gaynor that the IRS had rejected his Statement of Reasonable Cause concerning the Sonoside Form 5471 filings.  FAC ¶ z.  As such, the IRS informed Mr. Gaynor that the IRS would assess a $10,000 penalty against Mr. Gaynor for each of the years 2004 through 2015 for which he had failed to submit the required forms for Sonoside, for a total of $120,000.  *Id.*  The IRS further advised Mr. Gaynor that if he disagreed with the IRS's decision, he could submit a reconsideration request to the IRS Office of Appeals.  *Id.*  In turn, Mr. Gaynor transmitted a Protest of the Sonoside Form 5471 penalties to the IRS, as well as a Request for Consideration by the Office of Appeals.  *Id.* ¶ aa.

Similarly, on June 6, 2018, the IRS sent a letter denying Mr. Gaynor's Runcar Statement of Reasonable Cause, as well.  FAC ¶ cc.  Accordingly, the IRS informed Mr. Gaynor that the IRS would assess a $10,000 penalty against Mr. Gaynor for each of the years 2002 through 2015 for which he had failed to submit the required forms for Runcar, for a total of $140,000 (*i.e.*, in addition to the $120,000 for Sonoside).  *Id.*  That IRS letter further advised Mr. Gaynor that if he did not agree with the decision, he could seek reconsideration.  *Id.* ¶ cc.  As Mr. Gaynor had done for Sonoside, he transmitted to the IRS a Protest of the Runcar Form 5471 penalties, as well as a Request for Consideration by the IRS Office of Appeals.  *Id.* ¶ dd.[5]

As highlighted *supra*, to date, Mr. Gaynor has paid $23,600 towards the penalties assessed against him.  *See* FAC ¶¶ 13-19.  Mr. Gaynor did so through a number of different lump-sum payments, of varying amounts, and at different times, related to

---

[4] Mr. Gaynor "assumed that, as Runcar was effectively a subsidiary of Sonoside, no Form 5471 was required to be filed for Runcar."  FAC ¶ v.

[5] Mr. Gaynor noted that as of the date of filing of his FAC, he had not yet received a response from the IRS Office of Appeals to either of his Requests for Consideration.  FAC ¶¶ bb, ee.

different tax years. These payments can be divided into two groups – those made prior to Mr. Gaynor's filing of his initial Complaint, and those made after Mr. Gaynor filed his initial Complaint (but prior to Mr. Gaynor's having filed his FAC).

Before Mr. Gaynor filed his initial Complaint, he made three partial payments for a total of $3,800. First, on June 19, 2018, he made a $1,200 partial payment to the IRS. FAC ¶ 13. Mr. Gaynor's $1,200 payment was accompanied by a letter indicating that he wished for that lump-sum payment to be applied towards the penalties that were assessed against him (based on his interest in Sonoside) for the years 2004-2015, in allocations of $100 for each year, respectively. *Id.* Second, on November 21, 2018, still before Mr. Gaynor filed his initial Complaint, he made an additional $1,400 partial payment to the IRS. *Id.*¶ 14. Mr. Gaynor's $1,400 payment was accompanied by a letter asking for that lump-sum payment to be applied towards the penalties that were assessed against him (based on his interest in Runcar) for the years 2002-2015, allocated at $100 for each year. *Id.* Third, on December 18, 2018, the IRS informed Mr. Gaynor that the IRS had "applied a Form 1040 overpayment for the year 2004 in the amount of $1,200 to the civil penalty owed for December 31, 2004." FAC ¶ 15. Thus, Mr. Gaynor contends that he essentially made an additional $1,200 payment in December 2018, for the penalties assessed against him in 2004. *Id.* ¶ 22.

After Mr. Gaynor filed his initial Complaint – but before Mr. Gaynor filed his FAC – he made two additional payments, for a total of $19,800. First, on or around April 20, 2019, Mr. Gaynor paid $9,900 towards the penalty assessed against him for 2010 based on his interest in Sonoside. FAC ¶ 16. Second, on that same day, Mr. Gaynor paid $9,900 towards the penalty assessed against him for 2010 based on his interest in Runcar. *Id.* ¶ 17. Each of these partial 2019 payments represented the remaining balance that was due for the 2010 penalties following Mr. Gaynor's partial 2018 payments.[6] Accordingly, following Mr. Gaynor's April 20, 2019 payments, he had paid in full the penalties assessed against Mr. Gaynor for the 2010 tax year.

On April 20, 2019, the same day on which Mr. Gaynor fully paid the 2010 penalties assessed against him, he also sent letters to the IRS which included IRS Form 843 (Claims for Refund). FAC ¶¶ 18-19. Specifically, Mr. Gaynor sought a refund for the $10,000 penalties the IRS assessed against him based on Mr. Gaynor's interest in Sonoside and Runcar, respectively, related to the year 2010 alone.[7]

---

[6] This number is based on the full $20,000 that was assessed against Mr. Gaynor for 2010, minus the $200 which Mr. Gaynor had previously (as part of the original 2018, $3,800 payment).

[7] Nevertheless, as the government points out and as the Court explains *infra*, at no time prior to the filing of this suit did Mr. Gaynor file any refund claims with the IRS for the penalties assessed against him for either of the entities for any tax years other than for 2010. Moreover, Mr. Gaynor did not receive, and has not received, a notice of disallowance regarding any of his claims for any year, *including* 2010.

## II.    PROCEDURAL HISTORY

On January 10, 2019, Mr. Gaynor filed a Complaint in this Court seeking a refund of $3,800 of the penalties assessed against him based on his interest in both Sonoside and Runcar, for the years 2002 through 2015.  *See* Compl. ¶¶ 20-22.  On April 10, 2019, the government filed a motion to dismiss for lack of subject-matter jurisdiction, pursuant to RCFC 12(b)(1).  *See* ECF No. 8.

Prior to Mr. Gaynor's filing of his response to the government's motion, on April 22, 2019, Mr. Gaynor moved for leave to file an amended complaint, which was granted on September 6, 2019.  *See* ECF No. 9; ECF No. 15.[8]  In Mr. Gaynor's FAC – as he previously had alleged in his initial Complaint – Mr. Gaynor asserted that until the IRS notified him via the Sonoside and Runcar Failure Notices, he was unaware of *any* Form 5471 filing responsibility for either Sonoside or Runcar.  FAC ¶ v.; *see also id.* ¶ ff. Mr. Gaynor thus maintains that he had reasonable cause for not filing such forms until after he received the failure notices.  *Id.* ¶¶ v-x.  Accordingly, Mr. Gaynor claims that "[t]he penalty assessed against [him] for failure to timely file Forms 5471 for Sonoside with respect to the years 2004 through 2015, in the amount of $10,000 for a total of $120,000, is without legal basis and therefore erroneous."  *Id.* ¶ ii.  Mr. Gaynor likewise contends that "[t]he penalty assessed against Plaintiff for failure to timely file Forms 5471 for Runcar with respect to the years 2002 through 2015, in the amount of $10,000 for a total of $140,000, is without legal basis and therefore erroneous."  *Id.* ¶ jj.

Primarily, Mr. Gaynor's FAC updates his initial Complaint through alleging that he made additional payments to the IRS since the time he filed his initial Complaint. FAC ¶¶ 16-19.  Specifically, Mr. Gaynor contends that in the interim, between when he filed his initial Complaint and his FAC, Mr. Gaynor *fully* paid the penalties arising from his failure to file Form 5471 for both Sonoside and Runcar for the year 2010.  *See* FAC ¶¶ 16-19.  Mr. Gaynor further alleged that he also had filed refund claims with the IRS for each of the payments made pertaining to the penalties assessed against Mr. Gaynor stemming from his interest in each of the foreign corporations (*i.e.*, Sonoside and Runcar).  *Id.*[9]

---

[8] The Court notes that during the pendency of Mr. Gaynor's motion to amend his Complaint, the parties, in fact, fully briefed the previously pending motion to dismiss Mr. Gaynor's initial Complaint.  *See* ECF No. 10; ECF No. 13.  As the Court explains below, however, contrary to the belief that Plaintiff's counsel expressed at oral argument, the motion to dismiss the initial Complaint was rendered moot when Mr. Gaynor filed his now-pending FAC.  *See* ECF No. 15; *see infra* n. 5.

[9] As the Court will explain *infra*, however, Mr. Gaynor alleges neither that he had received a notice of disallowance of his refund claim from the IRS, nor that he had waited six months from the time of filing the refund claim to the date on which he filed suit in this Court, as required. *See Clintwood Elkhorn Min.*, 553 U.S. at 4-5.

Following Mr. Gaynor's filing of his FAC, on September 20, 2019, the government filed a motion to dismiss Mr. Gaynor's FAC for lack of subject-matter jurisdiction, pursuant to RCFC 12(b)(1).  *See* ECF No. 17-1 ("Def. Mot.").  On October 8, 2019, Mr. Gaynor filed a response in opposition to the government's motion.  *See* ECF No. 19 ("Pl. Resp.").  On February 25, 2020, the government filed a reply brief to Mr. Gaynor's response, in further support of the motion to dismiss.  *See* ECF No. 26 ("Def. Rep.").

After the government's motion to dismiss was fully briefed, the Court held oral argument on April 6, 2020.  During oral argument, Plaintiff's counsel assumed that the Court somehow would consider Mr. Gaynor's response not only to the government's pending motion to dismiss the FAC, but also his response brief opposing the government's motion to dismiss the *initial Complaint*, both of which the FAC had rendered moot.  In that regard, Plaintiff's counsel repeatedly referenced arguments that previously were advanced in plaintiff's response to the government's motion to dismiss the *initial* Complaint (ECF No. 16), but which had not been restated – or even referenced in any manner – in Mr. Gaynor's response to the government's motion to dismiss plaintiff's FAC (ECF No. 19).[10]

---

[10] After Mr. Gaynor filed his FAC, the only relevant responsive pleadings are those which were subsequently filed in response to the FAC because "'an amended pleading supersedes the original.'"  *Viam Mfg., Inc. v. Iowa Export–Import Trading Co.*, 243 F.3d 558, 2000 WL 1234623, at *5 (Fed. Cir. Aug. 31, 2000) (unpublished) (quoting *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990)); *Gould, Inc. v. United States*, 29 Fed. Cl. 758, 759 n.1 (1993) ("An amended complaint entirely supersedes and replaces the original complaint."), *vacated on other grounds*, 67 F.3d 925 (Fed. Cir. 1995); *see Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 456 (2009) ("Normally, an amended complaint supersedes the original complaint."); *Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 706 (1982) ("[O]nce accepted, an amended complaint replaces the original.").  Therefore, "motions addressed to the original complaint are generally regarded as moot upon the filing of an amended complaint."  *Smith v. United States*, 120 Fed. Cl. 455, 460 (2015); *see JRS Mgmt. v. Lynch*, 621 F. App'x 978, 982 (Fed. Cir. 2015) ("[O]nce the Board authorized [plaintiff] to file an amended complaint, the motion to dismiss the original complaint, which had been superseded, was rendered moot."); *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1365 (Fed. Cir. 2000) ("It is hornbook law that an amended complaint complete in itself and making no reference to nor adopting any portion of a prior complaint renders the latter *functus officio*.").  Arguments not renewed in response to the government's pending motion are waived.  *Jet Inc.*, 223 F.3d at 1365; *see Boulware v. California Dep't of Ins. Com'r*, 453 F. App'x 758, 759 (9th Cir. 2011) ("[Plaintiff] waived any argument regarding the dismissal of his state law malicious prosecution claim by failing to reallege the claim in his . . . amended complaints."); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument [in a motion to dismiss]–as the [plaintiffs] have done here– results in waiver.").  The Court therefore holds, as further explained *infra*, that any arguments Mr. Gaynor's counsel did not re-raise in response to the government's motion to dismiss the FAC have been waived.

## III.    STANDARD OF REVIEW

The government moves to dismiss Mr. Gaynor's FAC for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1).  Def. Mot. at 1.  Accordingly, the Court accepts "as true all undisputed facts asserted in the plaintiff's complaint and draw[s] all reasonable inferences in favor of the plaintiff."  *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  Although the court is not limited to the pleadings in determining whether we possess subject-matter jurisdiction, *Pucciariello v. United States*, 116 Fed. Cl. 390, 400 (2014), the plaintiff "bears the burden of establishing the court's jurisdiction over its claims by a preponderance of the evidence."  *Trusted Integration,* 659 F.3d at 1163.  Thus, if the court finds that it lacks subject-matter jurisdiction over a claim, RCFC 12(h)(3) requires the Court to dismiss that claim.

Because the government's motion makes a facial attack on the jurisdictional facts contained in Mr. Gaynor's FAC (rather than a factual one), *see Crow Creek Sioux Tribe v. United States*, 900 F.3d 1350, 1355 (Fed. Cir. 2018), this decision assumes that such allegations — but not legal conclusions — are true for the purposes of resolving the pending motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss we must take all of the *factual* allegations in the complaint as true." (emphasis added)).

## IV.    THIS COURT LACKS JURISDICTION OVER MR. GAYNOR'S REFUND CLAIMS

"Because of the Court of Federal Claims' unique role in providing a forum for litigants who could not otherwise seek a remedy for their injuries, some have called the Court of Federal Claims 'the People's Court' or 'the conscience of the federal government.'"  Hadley Van Vactor, *Shifting Sands of Claim Accrual: John R. Sand & Gravel, Equitable Tolling, and the Suspension of Accrual in Tucker Act Cases*, 62 How. L.J. 441, 442 (2019) (quoting  Judge Loren A. Smith, *Why a Court of Federal Claims?*, 71 Geo. Wash. L. Rev. 773, 773 (2003)).  This Court thus "plays a vital role . . . in creating government legal accountability in the government's day-to-day dealings with citizens."  71 Geo. Wash. L. Rev. at 782-83.  The bounds of this "vital role," however, are not limitless – and we necessarily are constrained by our procedural rules and binding precedents in our ability to provide such "legal accountability."  *Id.* at 783.

Any citizen who seeks relief from this Court for the government's alleged actions must demonstrate that jurisdiction is proper in this Court in the first place.  *Park Props. Assocs., L.P. v. United States*, 916 F.3d 998, 1002 (Fed. Cir. 2019) ("Plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.").  Where a plaintiff fails to satisfy this Court's jurisdictional prerequisites, the Court is precluded from hearing the case at all.  *Colbert v. United States*, 617 F. App'x 981, 983 (Fed. Cir. 2015) ("No plaintiff, *pro se* or otherwise, may be excused from the burden of meeting the court's jurisdictional requirements.").  Accordingly, the Court must ensure – even at

times *sua sponte* – that it has jurisdiction over any claim presented.  RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see, e.g., St. Bernard Parish Gov't v. United States*, 916 F.3d 987, 992-93 (Fed. Cir. 2019).  This means that irrespective of the ultimate merits of a claim, plaintiffs first must meet our jurisdictional and procedural prerequisites.  *Mone v. United States*, 138 Fed. Cl. 279, 282 (2018) ("While the court is sympathetic to the problems recited in the complaint, . . . the court lacks jurisdiction to consider the claims in plaintiff's complaint."); *Simmons v. United States*, 71 Fed. Cl. 188, 194 (2006) (emphasizing that although plaintiff "presents some sympathetic facts. . . [t]he Court finds that it lacks jurisdiction").

In this case, the Court may not entertain Mr. Gaynor's FAC unless and until he satisfies this Court's jurisdictional prerequisites.  Because Mr. Gaynor has failed to satisfy such prerequisites, his FAC is not within this Court's jurisdiction, and the Court must dismiss his FAC pursuant to RCFC 12(b)(1).  For the reasons detailed below, the Court thus **GRANTS** the government's motion to dismiss.

### A.  The Jurisdiction Of The United States Court Of Federal Claims

We begin with the axiom that the United States government "cannot be sued without its consent" (*i.e.*, in the absence of a waiver of sovereign immunity).  *United States v. Navajo Nation*, 556 U.S. 287, 289 (2009); *see Diversified Grp., Inc. v. United States*, 123 Fed. Cl. 442, 447 (2015), *aff'd,* 841 F.3d 975 (Fed. Cir. 2016) (citing *United States v. King*, 395 U.S. 1, 3 (1969), for the proposition that "[t]he scope of [the Claims] [C]ourt's jurisdiction to entertain claims and grant relief depends upon the extent to which the United States has waived its sovereign immunity[]").  Accordingly, "except as Congress has consented to a cause of action against the United States, 'there is no jurisdiction in the Court of [Federal] Claims more than in any other court to entertain suits against the United States.'"  *United States v. Testan*, 424 U.S. 392, 400 (1976) (quoting *United States v. Herwood*, 312 U.S. 584, 587-588 (1941)).  Generally, "the jurisdiction of the Court of Federal Claims is defined by the Tucker Act, which gives the court authority to render judgment on certain monetary claims against the United States."  *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009).  The bounds of the Court's jurisdiction under the Tucker Act are defined in 28 U.S.C. § 1491, which provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

In addition to providing this Court with jurisdiction, the Tucker Act waives the sovereign immunity of the United States "[f]or actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating statutes, regulations, executive orders, or constitutional provisions[.]" *Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004); *see Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1327 (2020). The Tucker Act, however, "does not create a substantive cause of action" *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005), and "[n]ot every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act." *United States v. Mitchell*, 463 U.S. 206, 216 (1983). Instead, this Court may only exercise subject-matter jurisdiction over claims defined in the Tucker Act or which invoke specific statutory allegations within this Court's jurisdiction. *See United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003).

Particularly relevant in the instant case, I.R.C. § 7422(a) provides this Court with jurisdiction (pursuant to the Tucker Act) to decide claims seeking a refund of taxes or penalties the IRS collected. *See Clintwood Elkhorn Min. Co.*, 553 U.S. at 5. The requirements of I.R.C. § 7422 "impose[ ] . . . jurisdictional prerequisite[s] to a refund suit" which all tax refund plaintiffs in this Court must satisfy prior to initiating suit. *Chi. Milwaukee Corp. v. United States*, 40 F.3d 373, 374 (Fed. Cir. 1994); *see also Roberts v. United States*, 242 F.3d 1065, 1067 (Fed. Cir. 2001) (explaining that I.R.C. § 7422 imposes "jurisdictional prerequisites to filing a refund suit").

Satisfaction of this Court's jurisdiction prerequisites, however, must ordinarily occur at the time the initial complaint is filed. *Mendez-Cardenas v. United States*, 88 Fed. Cl. 162, 166–67 (2009) ("[T]he Response cannot serve to amend plaintiff's Complaint."); *McGrath v. United States*, 85 Fed. Cl. 769, 772 (2009) ("This court does not possess jurisdiction to hear claims presented for the first time in responsive briefing.").[11] Thus, an amended complaint cannot create jurisdiction where none existed in the first place. *See GAF*, 90 F.3d at 483 (affirming dismissal for lack of jurisdiction because, although plaintiff amended its complaint, "there was no jurisdiction when [plaintiff] filed its original complaint"); *Walton v. United States*, 80 Fed. Cl. 251, 264 (2008) ("[I]t appears that binding Federal Circuit case law has not departed from the established rule that jurisdiction is determined on the basis of the *facts that exist* at the time the complaint was filed."(emphasis added)), *aff'd*, 551 F.3d 1367 (Fed. Cir. 2009).

Despite this rule, an amended or supplemental pleading may be permitted to cure a jurisdictional defect in limited circumstances. *Walton*, 80 Fed. Cl. at 265. For example, in *Black,* the United States Court of Appeals for the Federal Circuit held that a

---

[11] This Court consistently has reaffirmed this principle, as have other courts. *See e.g., Kortlander v. United States*, 107 Fed. Cl. 357, 374 (2012); *Hufford v. United States*, 87 Fed. Cl. 696, 701 (2009); *Michels v. United States*, 72 Fed. Cl. 426, 432 (2006); *Fischer v. Minneapolis Pub. Sch.*, 792 F.3d 985, 990 (8th Cir. 2015); *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009).

Vaccine Act petitioner could cure a jurisdictional defect through a supplemental pleading. 93 F.3d at 790. Nevertheless, the Federal Circuit stressed that the determination of whether a supplemental pleading can be used to establish jurisdiction depends on a careful reading of the substantive provision at issue. *Id.* Thus, if the statute in question contained, "for example, an express prohibition against filing a complaint before the expiration of a statutory waiting period," allowing a supplemental pleading to evade such waiting period would be improper. *Id.* at 790.

In this case, even accepting all of the factual allegations in the FAC as true, this Court remains without subject-matter jurisdiction to hear Mr. Gaynor's claims. Because Mr. Gaynor failed to satisfy this Court's jurisdictional prerequisites prior to initiating a tax refund suit, the Court must dismiss his FAC pursuant to RCFC 12(b)(1).

**B.   IRS Form 5471**

Mr. Gaynor seeks a refund for tax penalties assessed against him due to his failure to file IRS Form 5471 in a timely manner. FAC ¶ 1. Pursuant to the I.R.C. and the Treasury Regulations ("Treas. Reg."), Title 26 of the Code of Federal Regulations ("C.F.R."), a United States citizen must file a Form 5471, "Information Return of U.S. Persons With Respect to Certain Foreign Corporations," for each year that such individual "maintains control of a foreign corporation." *See* I.R.C. § 6038(a); 26 C.F.R. § 1.6038-2(a), (b). "A person shall be deemed to be in control of a foreign corporation if at any time during that person's taxable year it owns stock possessing more than 50 percent of the total combined voting power of all classes of stock entitled to vote, or more than 50 percent of the total value of shares of all classes of stock of the foreign corporation." Treas. Reg. § 1.6038-2(b). Pursuant to the I.R.C. and Treasury Regulations, IRS Form 5471 must be filed with the U.S. individual's federal income tax return by the date the tax return is due, including any extensions granted. Treas. Reg. § 1.6038-2(i). For each year that a taxpayer fails to file Form 5471 in a timely fashion, the taxpayer must pay a $10,000 civil penalty. *Id.*; I.R.C. § 6038(b). However, the I.R.C. provides that the $10,000 penalty for failure to file Form 5471 in a timely manner will not be imposed if there is a reasonable cause for such failure. § 6038(c)(4).

Mr. Gaynor concedes that he failed to file Forms 5471 in a timely manner, as required by I.R.C. § 6038(b) and Treas. Reg. § 1.6038-2(i), for both Runcar and Sonoside, for every year in question. Thus, the only *merits* issues in dispute in the instant case are whether Mr. Gaynor had "reasonable cause" for his failure to file the forms, and consequently, whether he may seek relief from this Court for those penalties which he did pay. But, as explained in more detail *infra*, Mr. Gaynor failed to comply with statutory prerequisites prior to filing his initial Complaint in this Court. As such, the Court may not consider the merits of Mr. Gaynor's tax refund claim for any year.

### C.   The Court Lacks Subject-Matter Jurisdiction Over Any Of Mr. Gaynor's Tax Refund Claims

Because Mr. Gaynor, through his FAC, seeks relief pursuant to this Court's tax refund jurisdiction, the Court must examine whether Mr. Gaynor has satisfied the statutory requirements for initiating a tax refund suit.  *See* I.R.C. § 7422(a); *Clintwood Elkhorn Min. Co.*, 553 U.S. at 5.  As highlighted, *supra*, if the jurisdictional requirements of § 7422 have not been satisfied, this Court cannot exercise subject-matter jurisdiction over the tax refund action, and the case must be dismissed.  *See, e.g.*, *Shore v. United States*, 9 F.3d 1524, 1526 (Fed. Cir. 1993).

Ultimately, the government is correct:  Mr. Gaynor has not satisfied the Court's tax refund jurisdictional prerequisites for any year.  Accordingly, this Court quite clearly lacks subject-matter jurisdiction to entertain *any* of Mr. Gaynor's claims, pursuant to RCFC 12(b)(1).  The Court first addresses why Mr. Gaynor has failed to satisfy the Court's tax refund jurisdictional prerequisites regarding his 2018, partial payments for the penalties assessed against him for tax years 2002-2009 and 2011-2015.  The Court next explains why, even with regard to the "full" payments made in 2019 for the 2010 penalties, Mr. Gaynor still failed to satisfy this Court's tax refund jurisdictional prerequisites.

### 1.   The Court Lacks Subject-Matter Jurisdiction Over Mr. Gaynor's Claim Seeking A Refund For The 2018 Payments

As the government correctly observes, Def. Mot. at 7, Mr. Gaynor in 2018 only made partial payments for the tax penalties assessed against him for years 2002-2009 and 2011-2015**.**  Additionally, as the government also highlights, Def. Mot. at 7-8, Mr. Gaynor did not file a refund claim with the IRS for the tax penalties assessed against him with respect to years 2002-2009 and 2011-2015.  Accordingly, this Court does not possess subject-matter jurisdiction to consider Mr. Gaynor's claims seeking a refund for the partial payments he made in 2018 (towards the penalties assessed in 2002-2009 and 2011-2015).

### a.   Mr. Gaynor Did Not Satisfy The "Full Payment Rule" For The 2018 Payments

For a plaintiff to maintain a tax refund suit in the Court of Federal Claims, the taxpayer must first pay the contested tax assessment "in full."  I.R.C. § 7422; *see Diversified Grp., Inc. v. United States*, 841 F.3d 975, 981 (Fed. Cir. 2016) (citing *Flora v. United States*, 362 U.S. 145, 177 (1960), and discussing *Flora*'s "full payment rule").  Generally, to satisfy the "full payment rule" or "*Flora* Rule," a plaintiff must have paid the full amount of the tax (as well as any interest or penalties) which the taxpayer seeks to recover, prior to initiating a tax refund suit.  *See, e.g., Rocovich v. United States*, 933 F.2d 991, 994 (Fed. Cir. 1991); *Thomas v. United States*, 56 Fed. Cl. 112, 115-16 (2003);

*Lambropoulos v. United States*, 18 Cl. Ct. 235, 237 (1989).  This means that "[w]here the principal tax deficiency has not been paid in full, such tax refund claims are dismissed, regardless of any interest or penalty payments."  *Shore*, 9 F.3d at 1526 (citing *Tonasket v. United States*, 218 Ct. Cl. 709, 711 (1978)).

In the present case, Mr. Gaynor does not allege that he has satisfied the "full payment rule" in its ordinary sense.  Indeed, Mr. Gaynor did not seek a refund for the entire amount of civil penalties assessed against him.  Instead, as noted, before Mr. Gaynor filed his January 2019 Complaint, Mr. Gaynor made only partial payments, including two separate payments of $1,200 and $1,400, in June and November of 2018, respectively.  FAC ¶12.  These payments made in 2018 were to be applied to the penalties owed for years 2002 through 2015.  *Id.*  Specifically, as explained *supra*, these payments were to be divided into $100 increments for each year and were to be credited to the penalties assessed against Mr. Gaynor concerning his interest in each of Runcar and Sonoside, respectively.  *Id.* ¶¶ 13-14.  In addition, Mr. Gaynor also made a $1,200 payment towards the penalties assessed in 2004.

In turn, with the exception of the further payments that Mr. Gaynor made in 2019 towards the 2010 penalties (as the Court will discuss *infra*), Mr. Gaynor only seeks the refund of *part* of the penalties owed for the years 2002 through 2015 (*i.e.*, $3,800).  FAC ¶ 20-21.  This then begs the question whether Mr. Gaynor satisfied the "full payment rule" at least with respect to the partial refunds he seeks (*i.e.*, for the amounts which he *did* pay "in full").  The Court answers that question in the negative and holds that Mr. Gaynor has not satisfied the full payment rule.  Thus, the Court lacks jurisdiction even over Mr. Gaynor's partial refund claims.

The precedents of this Court and the Federal Circuit suggest that in some cases, if a plaintiff *does not* contest the full amount of an assessed penalty– and instead only seeks a refund for a portion of it – the plaintiff need not have paid the entire outstanding penalty to satisfy this Court's "full payment" jurisdictional prerequisite.  *See, e.g., Shore*, 9 F.3d at 1526; *Diversified Grp.*, 123 Fed. Cl. at 450-51; *Magee v. United States*, 24 Cl. Ct. 511, 512 (1991).  In other words, at times, a tax refund plaintiff, such as Mr. Gaynor, may successfully satisfy the "full payment rule" even if outstanding amounts of taxes or penalties remain owed – provided that the plaintiff only seeks recovery of that portion actually paid "in full."  *Shore*, 9 F.3d at 1526.  Notably, however, such partial payments suffice in a limited subset of cases, having "been recognized by the courts" as an exception to the ordinary full payment rule only "where an assessment covers divisible taxes."  *Rocovich*, 933 F.2d at 995; *see Cencast Serv., L.P. v. United States*, 729 F.3d 1352, 1366 (Fed. Cir. 2013) (holding that "where a tax is divisible, the taxpayer may pay the full amount on one transaction, sue for a refund for that transaction, and have the outcome of this suit determine his liability for all the other, similar transactions" (citation and internal quotation marks omitted)).

For a partial payment to be deemed payment "in full," the payment or various payments made towards the assessment must themselves be viewed as separate "full" payments. *See Rocovich*, 933 F.2d at 995. This Court helpfully distilled that idea in *Diversified Group*:

> Stated otherwise, divisible "taxes or penalties . . . are seen as merely the sum of several independent assessments triggered by separate transactions. In such cases, the taxpayer may pay the full amount on one transaction, sue for a refund for that transaction, and have the outcome of this suit determine his liability for all the other, similar transactions." *Korobkin v. United States*, 988 F.2d 975, 976 (9th Cir. 1993) (per curiam). Thus, if a tax or penalty is considered divisible, partial payment is sufficient to confer jurisdiction on the court over the refund claim.

123 Fed. Cl. at 451. Thus, if a portion of a tax assessment *was* paid, and *that* partial payment could be deemed divisible from the outstanding balance, the "full payment rule" would not bar recovery of the partial payment simply because some *other* outstanding amount remained. *See, e.g.*, *Katz v. United States*, 22 Cl. Ct. 714, 715 (1991).

Generally, a tax assessment is only divisible if "it represents the aggregate of taxes due on multiple transactions." *Rocovich*, 933 F.2d at 995. This Court has emphasized, however, that "[t]here are limited circumstances in which a tax [or penalty] can be considered divisible and thus qualify as an exception to the full payment rule." *Diversified Grp.*, 123 Fed. Cl. at 451 (observing that "*if* a tax or penalty is considered divisible, partial payment is sufficient to confer jurisdiction on the court over the refund claim[]"(emphasis added)). For example, although this Court observed in *Diversified Group* that an excise tax imposed on goods (*i.e.*, on their manufacture, sale, or use), on an occupation, or on an activity "may be divisible into a tax on each transaction or event[,]" this Court found that because "plaintiffs were assessed [a] $24.9 million penalty for failure to register their tax shelter—a *single act* [—] . . . the [tax shelter] penalty [was] not divisible for any reason[.]" 123 Fed. Cl. at 451 (citing *Flora*, 362 U.S. at 175 n.37) (emphasis added).

Another kind of tax assessment which falls under the partial payment exception are payroll taxes paid by employers, which are considered divisible "because they [are] assessed separately for each employee." *Korobkin*, 988 F.2d at 976; *see Kaplan v. United States*, 115 Fed. Cl. 491, 494 (2014). Specifically, because the penalties imposed upon employers for failing to pay such taxes are "'considered a cumulation of separable assessments for each of the employees involved . . . after payment of one or more employee's taxes[,]'" an employer may seek a refund for each of such penalties. *Diversified Grp.*, 123 Fed. Cl. at 451 (quoting *Fid. Bank, N.A. v. United States*, 616 F.2d 1181, 1182 n.1(10th Cir. 1980)).

With regard to Mr. Gaynor's 2018 payments, the Court holds that he has not satisfied the "full payment rule." Indeed, Mr. Gaynor only sought a refund of the $3,800 which he actually paid — rather than for the total amount of civil penalties he owed but did not pay "in full" ($260,000). Had the penalties assessed against Mr. Gaynor been divisible, the Court *may* have been able to treat his initial refund claims as related to amounts that had been paid "in full" (*i.e.*, his $3,800 payment could have been deemed separate "full payments" of divisible penalties). There is no basis, however, upon which the Court can conclude that penalties owed pursuant to IRS Form 5471 are divisible.

As I.R.C. § 6038(b) requires, the penalty assessed for a failure to file a form 5471 is $10,000 *per year*. This means that unlike, for example, excise taxes, a penalty imposed against a taxpayer pursuant to § 6038(b) for a particular year cannot be considered a collection of separate "transaction[s] or event[s]" and is instead merely a "single act[]" which is "not divisible for any reason[.]" *Diversified Grp.*, 123 Fed. Cl. at 451.

The Court's conclusion comports with precedent establishing that the partial payment and divisible assessment exceptions to the "full payment rule" remain limited. *Kaplan*, 115 Fed. Cl. at 494 (limiting its divisible assessment holding to "the circumstances of th[at] case"); *Vir v. United States*, 125 Fed. Cl. 293, 302-03 (2016) (emphasizing the limited scope of the divisible assessment exception to the "full payment rule," and thus rejecting plaintiff's reliance on *Kaplan*); *see also Larson v. United States*, 2016 WL 7471338 at *5 (S.D.N.Y. Dec. 28, 2016) (discussing limited nature of the divisible assessment exception), *aff'd*, 888 F.3d 578 (2d Cir. 2018).

We see no reason to depart from the ordinary "full payment rule" in this case.[12] Accordingly, the Court agrees with the government that the payments that Mr. Gaynor's made in 2018 towards the penalties assessed against Mr. Gaynor stemming from his interest in Sonoside and Runcar for tax years 2002-2015 did not constitute payment "in full," and the Court therefore lacks subject-matter jurisdiction over Mr. Gaynor's claims in this case.

---

[12] In addition to the divisible assessment exception to the "full payment rule," Congress also has allowed for some tax refund suits to proceed after a plaintiff has made partial payment of certain penalties. *Diversified Grp.*, 123 Fed. Cl. at 451 (citing 26 U.S.C. §§ 6694(c), 6700, 6701). The absence of any such allowance by Congress with regard to I.R.C. § 6038 would suggest that partial payments do not suffice to establish this Court's jurisdiction. *Cf. Renda Marine, Inc. v. United States*, 71 Fed. Cl. 782, 796 (2006) ("Indeed[,] . . . Congress knows how to draft exceptions to [] rules when it wishes to do so[.]"); *see also* Paul Marcotte, Jr., *Pain Relief From Undisclosed Offshore Holdings: IRS International Penalty Procedure And Strategy*, 25 J. Int'l Tax'n 26, 29 n.18 (2014) (discussing § 6038 penalties for failure to file IRS Form 5471 and implicitly rejecting the notion that such penalties are divisible).

### b. Mr. Gaynor Failed To File Refund Claims For The 2018
     Payments Towards The 2002-2009 And 2011-2015 Penalties

Even if Mr. Gaynor *had* satisfied the full payment rule – or even if his partial payments were for divisible penalties – dismissal of Mr. Gaynor's FAC pursuant to RCFC 12(b)(1) still would be required (for all tax years at issue except for 2010) based on his failure to file the requisite administrative refund claims prior to initiating this tax refund suit.  I.R.C. § 7422.  Although Mr. Gaynor filed a proper refund claim for the 2010 penalties, he failed to file administrative refund claims for the civil penalties assessed against him for any of the other years at issue (*i.e.*, 2002-2009 and 2011-2015).

For a taxpayer to maintain a refund suit in this Court, a plaintiff who has paid the contested tax assessment in full also must demonstrate that a written claim for refund was filed, in a timely manner, with the Secretary of the Treasury.  *See, e.g., Clintwood Elkhorn Mining Co.*, 553 U.S. at 7-8; *Schiff v. United States*, 24 Cl. Ct. 249, 251 (1991) ("It is well settled that the timely filing of an administrative refund claim with the IRS is a condition precedent for tax refund jurisdiction in the Claims Court." (internal citations omitted)); *see also United States v. Williams*, 514 U.S. 527, 533 (1995).

A taxpayer seeking a refund from the IRS may file either a formal or an informal claim, provided that the form of the claim puts the IRS sufficiently on notice of the fact that the taxpayer is claiming a refund.  *See Computervision Corp. v. United States*, 445 F.3d 1355, 1363-64 (Fed. Cir. 2006) (noting that this requirement "is designed both to prevent surprise and to give adequate  notice to the [IRS] of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination"), *cert. denied*, 549 U.S. 1338 (2007); *First Nat. Bank of Fayetteville, Ark. v. United States*, 727 F.2d 741, 744 (Fed. Cir. 1984) ("[T]he claim [must] set forth in detail each ground upon which a refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.").

Because the IRS must be apprised sufficiently of a refund claim for it to be deemed valid for jurisdictional purposes, "new claims or theories raised subsequent to the initial refund claim are not permitted where they substantially vary from the theories initially raised in the original claim for refund."  *Cencast Servs.*, 729 F.3d at 1367; *see Ottawa Silica Co. v. United States*, 699 F.2d 1124, 1138 (Fed. Cir. 1983).  The applicable regulations provide that a taxpayer must file a claim for refund "on the form so prescribed" and "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof."  Treas. Reg. § 301.6402-2(b)(1), (2)(c).

Specifically, the IRS form that is generally used to claim a refund of a penalty is Form 843, entitled "Claim for Refund and Request for Abatement."[13]  Thus, a taxpayer ordinarily must submit Form 843 to the IRS prior to filing a tax refund suit.  *Id.*  Where a plaintiff has failed to satisfy this requirement, we are without jurisdiction to hear the case, as the "'the provisions governing refund suits in . . . the United States Court of Federal Claims . . .  make timely filing of a refund claim a jurisdictional prerequisite to bringing suit[.]'"  *Dumont v. United States*, 345 F. App'x 586, 590 (Fed. Cir. 2009) (quoting *Commn'r v. Lundy*, 516 U.S. 235, 239–40 (1996)); *accord Martti v. United States*, 121 Fed. Cl. 87, 98 (2015); *Schroerlucke v. United States*, 100 Fed. Cl. 584, 591 (2011).

In this case, the government is correct that Mr. Gaynor did not properly seek a refund for *any* of his 2018 "partial payments" of the penalties at issue.  Neither Mr. Gaynor's FAC nor his response to the motion to dismiss the FAC contest this conclusion.  That being the case, Mr. Gaynor has failed not only to put the IRS "on notice" of his claimed refund for the penalties assessed against him for 2002 through 2009 or for those assessed against him from 2011 through 2015, but also to comply with a jurisdictional prerequisite to maintaining a tax refund claim in this Court.

During oral argument, Mr. Gaynor's counsel directed the Court to his response to the government's motion to dismiss the initial Complaint, in which Mr. Gaynor advanced arguments rooted in the so-called "informal claims doctrine."  *See* ECF No. 14.  The Court already has concluded, however, that because Mr. Gaynor did not include those prior arguments in his response to the pending motion to dismiss, such arguments, regardless of their merit, have been waived.  Nevertheless, the Court has reviewed the almost eighty-year-old case that Plaintiff's counsel cited during oral argument, *United States v. Kales*, 314 U.S. 186 (1941).  Specifically, Plaintiff's counsel argued that although Mr. Gaynor never submitted a *formal* claim for refund to the IRS, Mr. Gaynor's informal correspondence with the IRS – through which Mr. Gaynor putatively protested the IRS's assessments – constituted an "informal claim" for refund.  As such, Plaintiff's counsel contended that Mr. Gaynor did, in fact, satisfy the second jurisdictional prerequisite, via an "informal claim."  *Kales*, however, does not stand for the proposition that *any* kind of statement made to the IRS can be deemed an "informal claim."  Rather, *Kales* holds that *certain* informal claims can meet the jurisdictional prerequisite if they are followed by a formal claim, or if there is some other unique component of the "informal claim" which allows it to satisfy the usual requirement that one must file formal claim.  314 U.S. at 194.  In other words, although informal claims *may*, at times satisfy § 7422, the correspondence with the IRS upon which Mr. Gaynor relies with respect to years 2002-2009 and 2011-2015, *see* FAC ¶¶ aa-dd, do not meet even the lower threshold of being considered "informal claims."

---

[13] *See* Internal Revenue Service, *About Form 843, Claim for Refund and Request for Abatement, available at* https://www.irs.gov/forms-pubs/about-form-843.

The government, during oral argument, directed the Court to a number of cases which are further instructive on this point.  For example, in *Ertle v. United States*, the Court of Claims (the Federal Circuit's predecessor) held that a "protest and claim for abatement made prior to the payment of the tax" did not comply "with the plain wording of the statute which requires the filing of a claim for a refund within a stated period after payment"  93 F. Supp. 619, 620 (Ct. Cl. 1950).  Accordingly, the Court of Claims concluded that such a claim was not "sufficient to confer jurisdiction upon this Court which it does not otherwise possess."  *Id.*

The government's view in this case is consistent with more recent jurisprudence: an "informal claim" may be valid, but for such a claim to satisfy this Court's tax refund jurisdictional prerequisites, it must sufficiently apprise the IRS of the dispute, such as through "written protests prior to payment."  *Computervision Corp.*, 445 F.3d at 1365 (citing *Newton v. United States*, 163 F. Supp. 614, 619-20 (Ct. Cl. 1958)); *see, e.g.*, *Bibbs v. United States*, 230 F.3d 1378 (Fed. Cir. 2000) (unpublished) (citing *Arch Eng'g Co., Inc. v. United States*, 783 F.2d 190, 192 (Fed. Cir. 1986), for the proposition that minimum requirements for an "informal" refund claim include written request for sums paid for a particular tax year).  However, as the Court of Claims held in *Newton* – another case the government referenced – "[n]o hard and fast rules can be applied because it is a combination of facts and circumstances which must ultimately determine whether or not an informal claim constituting notice to the Commissioner has been made."  163 F. Supp. at 619.  Instead, "each case must be decided on its own peculiar set of facts with a view towards determining whether under those facts the Commissioner knew, or should have known, that a claim was being made."  *Id.*

In this case, "none of the documentary evidence relied on by [Plaintiff] shows that [Plaintiff] was making a present assertion of entitlement to a refund which would constitute a 'claim' requiring final determination by the IRS."  *Mobil Oil Corp. v. United States*, 991 F.2d 811 (Fed. Cir. 1993) (unpublished) (citing *Arch Eng'g Co.*, 783 F.2d at 192, for the proposition that "documents which are merely a normal part of the process and which do not apprise the IRS that taxpayer is presently seeking a refund do not constitute an informal refund request"); *see also Miller v. United States*, 949 F.2d 708, 711 (4th Cir. 1991) ("[A]n informal claim must afford the IRS clear notice of a demand for refund in order to enable to administration of that office to conduct its affairs[.]").  Looking to the "peculiar set of facts" at issue here, *Newton*, 163 F. Supp at 619, the Court concludes that Mr. Gaynor did not file an "informal refund claim."  Instead, Mr. Gaynor simply informed the IRS of his desire to avoid payment of the tax assessment at issue by explaining why he did not know about his filing obligations.  Mr. Gaynor's explanation to the IRS (characterized in the FAC as a "protest"), however, does not suggest that "the Commissioner knew, or should have known, that a claim was being made."  *Newton*, 163 F. Supp at 619.  To the contrary, if anything, Mr. Gaynor's "protest" informed the IRS that he had *no intention* of paying the penalties assessed against him, not that he had paid or would pay them and then seek a refund.

Accordingly, even under this new theory that Plaintiff's counsel first raised during oral argument, no administrative refund claims – whether formal or informal – have been made for the years 2002-2009 or 2011-2015.  In any event, as the Court held, *supra*, Mr. Gaynor's "informal claim" argument, ECF No. 13 at 6, re-raised for the first time on the day of argument, has been waived.[14]

Mr. Gaynor argues in his response to the government's motion to dismiss that "[d]efendant's sole argument for the dismissal of the Amended Complaint is that six months had not elapsed from the filing of Forms 843-Claim for Refund before the Amended Complaint was filed, as required by I.R.C. § 6532(a)(1)."  Pl. Resp. at 3.  As the foregoing demonstrates, however, that contention is simply wrong.  Indeed, the government is correct that the $3,800 claimed refund is barred, as Mr. Gaynor did not file an administrative claim for such a refund with the IRS.  Thus, for this further reason, Mr. Gaynor's FAC is **DISMISSED** pursuant to RCFC 12(b)(1).

> **2. The Court Lacks Subject-Matter Jurisdiction Over Mr. Gaynor's Claim Seeking A Refund For The Full Payment Made In 2019 Towards The 2010 Penalty Assessment**

The government further argues that even for the penalties assessed against Mr. Gaynor in 2010 – for which he may have both satisfied the "full payment rule" and filed a proper refund claim with the IRS – Mr. Gaynor still failed to satisfy yet other tax refund claim jurisdictional prerequisites.  Def. Mot. at 1-2.  The government is correct. Even assuming that Mr. Gaynor has paid the 2010 penalties "in full" and that Mr. Gaynor also filed refund claims for such penalties in a timely manner, Mr. Gaynor did not receive a notice of disallowance, nor did Mr. Gaynor wait six months after filing his refund claim for the 2010 penalties before initiating this suit.  Accordingly, this Court lacks subject-matter jurisdiction to entertain *any* of Mr. Gaynor's claims, pursuant to RCFC 12(b)(1).

Mr. Gaynor alleged in his FAC that, between filing his initial Complaint and his FAC, he had paid the full penalties that were assessed against him for 2010, and that he also had filed a formal refund claim for such penalties with the IRS.  *See* FAC ¶16-19; FAC ¶ 29-30 (seeking $20,000 refund for 2010 penalties).[15]  The government is correct

---

[14] *See, e.g., Arakaki v. United States*, 62 Fed. Cl. 244, 246 n.9 (2004) (citing *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002), for the proposition that "[t]he court will not consider arguments that were presented for the first time . . . after briefing was complete[]"); *Res. Recycling Corp. v. United States*, 56 Fed. Cl. 612, 618 (2003) ("Courts are rightfully loathe to allow a party to raise an issue at oral argument for the first time because there is a lack of notice to the court and adversary." (citation and quotations omitted)).

[15] This figure stems from the two $100 payments that were made in 2018, prior to the filing of the initial Complaint, as well as the $19,800 payment that was made in 2019, after the initial Complaint was filed, but prior to the FAC – all of which were paid towards the 2010 penalties.

that Mr. Gaynor's 2019 payment – made after he filed his initial Complaint, but before he filed his FAC – is insufficient to vest this Court with subject-matter jurisdiction. Def. Mot. at 1, 3 (noting that "plaintiff alleges that he paid $9,900 towards each penalty assessed for the 2010 year on or around April 20, 2019" – *just two days* before filing his FAC). In other words, because payment "in full" is a jurisdictional requirement, it must be satisfied at the time at which the tax refund suit is filed. *Katz*, 22 Cl. Ct. at 715. Similarly, the requirement that a plaintiff file a refund claim with the IRS prior to initiating a tax refund suit is also a jurisdictional prerequisite. *See, e.g., Clintwood Elkhorn Mining Co.*, 553 U.S. at 7; *Schiff*, 24 Cl. Ct. at 251.

In turn, a tax refund plaintiff's pleadings may not be amended in order to create an additional claim for the "full" amount paid for any assessment which had not yet been paid, and for which no corresponding administrative tax refund claim had been submitted to the IRS at the time the initial Complaint was filed. *See GAF*, 90 F.3d at 481 (affirming lower court's dismissal for lack of subject-matter jurisdiction because "there was no jurisdiction when [plaintiff] filed its original complaint"); *Walton*, 80 Fed. Cl. at 262 ("Plaintiffs are permitted to amend their complaints to cure defective allegations of jurisdiction . . . but events that occur subsequent to the filing of a complaint cannot alter the jurisdictional facts that existed at the time plaintiff filed the initial complaint." (citation and quotations omitted)). In sum, "since jurisdiction attaches at the commencement of an action, [Mr. Gaynor's] failure to pay the penalties before filing suit deprive[s] the Claims Court of jurisdiction." *Katz*, 22 Cl. Ct. at 715; *see also Garrett v. United States*, 132 F.3d 50 (Fed. Cir. 1997) (unpublished) ("Under this section, a claim for a refund must be filed with the Internal Revenue Service before an action may be filed in the Court of Federal Claims. Mr. Garrett filed his claims for a refund of taxes for 1993, 1994, and 1995 with the Internal Revenue Service approximately two months after he filed his complaint. Therefore, the Court of Federal Claims correctly found that it had no jurisdiction to entertain the suit.").

Even were this Court to assume that Mr. Gaynor satisfied the full payment and administrative tax refund jurisdictional prerequisites (with respect to the 2010 penalties at issue), this Court still would lack jurisdiction over Mr. Gaynor's FAC because he neither received a notice of administrative claim disallowance nor waited six months from the time he submitted a claim before initiating his suit. In that regard, Mr. Gaynor has not alleged that he received notice of a "claim disallowance" from the IRS regarding *any* claimed refunds for *any* years that civil penalties were assessed against him (*i.e.,* 2002-2015). Section 6532(a)(1) of the IRC provides that "no suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time[.]" This requirement – similar to the "full payment rule" and the administrative refund claim requirements – is a jurisdictional prerequisite. *See, e.g., Strategic Housing Finance Corp. of Travis County v. United States*, 608 F.3d 1317, 1329 (Fed. Cir. 2010).

Moreover, a taxpayer must receive a formal claim disallowance from the IRS, and mere knowledge of the IRS's *intent* to issue a formal decision at a later point is insufficient.  *See Harper International Corp. v. United States*, 120 Fed. Cl. 66, 71-73 (2015); *see also* I.R.C. § 1313(a)(3)(A) (explaining that "a final disposition by the Secretary of a claim for refund [may be] finally disposed" through the IRS "mailing [a] notice  of disallowance"); *Mobil Corp. v. United States*, 52 Fed. Cl. 327, 336 (2002) (defining a "formal notice of disallowance" as one which is a "[f]inal action on plaintiff's original claim"); *cf. Byrne v. United States*, 127 Fed. Cl. 284, 294 (2016) (noting that a "[p]laintiff's participation in the [IRS] appeals process is not relevant to the validity of the IRS's [formal] notice of disallowance . . . issued . . . in accordance with standard IRS practices and procedures").

Thus, even assuming all of the nonconclusory facts asserted in the FAC are true, as the Court must at this stage, the FAC does not demonstrate or even suggest that the IRS *ever* provided Mr. Gaynor with a formal notice of disallowance of any refund, even for the 2010 penalties.  In fact, Mr. Gaynor expressly acknowledges that he had a September 26, 2019 phone call with an IRS appeals officer, in which the latter stated that the IRS "would not agree with Mr. Gaynor's position" and that "written confirmation of this decision of IRS Appeals *would probably not be issued until the end of this year*."  Pl. Resp. at 4 n.3 (emphasis added).  Thus, as of the filing of the FAC, the required "formal" claim disallowance had not yet been issued by the IRS for refund claims relating to the 2010 penalties.  *Harper International Corp.*, 120 Fed. Cl. at 71-73.  Moreover, Mr. Gaynor does not dispute that when he filed his initial Complaint in January of 2019, he had not yet waited six months from the time at which he had filed a refund claim with the IRS.  Instead, the only issue is whether through the filing of the FAC – in April of 2019 – Mr. Gaynor somehow satisfied the six-month waiting requirement.  The Court concludes that he did not.

Again, the requirements contained in I.R.C. § 6532(a)(1) – including the six-month waiting period – are jurisdictional.  *See Williams*, 514 U.S. at 533; *Roberts*, 242 F.3d at 1067 (holding that the requirement that an "administrative claim must be either disallowed or not acted upon within six months after it was filed with the IRS" is deemed "[a] jurisdictional prerequisite[] to filing a tax refund suit"); *Thomas*, 56 Fed. Cl. 120 (dismissing *sua sponte* plaintiff's claim for refund where plaintiff filed his complaint fewer than six months after making a claim for refund).  In this case, Mr. Gaynor *did not* wait six months from the date upon which he paid the 2010 penalties and sought a refund prior to filing his FAC.  In fact, as the government highlighted, a mere three days elapsed from when Mr. Gaynor paid the $19,800 for the 2010 penalties and sought a refund using IRS Form 843, until the date on which he filed his FAC.  *See* Def. Mot. at 7.

Mr. Gaynor argues, however, that his FAC should, in a sense, "relate back" to the date of his initial Complaint to allow him to satisfy the six-month waiting period retroactively.  In other words, Mr. Gaynor seeks for this Court to somehow view the payments he made in **April** of 2019 as a satisfaction of the "full payment" that

Mr. Gaynor was required to have made before filing his *initial* Complaint months earlier in **January** of 2019.  The Court rejects such an approach to the jurisdictional prerequisites at issue.

As the government correctly argued, Def. Mot. at 7-9, this case, like *Black*, concerns an "express prohibition against filing a complaint before the expiration of a statutory waiting period," which cannot be cured through an amended pleading.  93 F.3d at 790.  This Court agrees.  *Walton*, 80 Fed. Cl. at 264, *aff'd,* 551 F.3d at 1367; *Gerami v. Sec'y of HHS*, 127 Fed. Cl. 299, 304-05 (2014).  Accordingly, the Court does not have jurisdiction over Mr. Gaynor's claims because the requisite waiting period had not yet elapsed when he filed his initial Complaint, and he may not use the FAC to circumvent the six-month jurisdictional requirement.  Furthermore, the fact that during the pendency of this litigation the waiting period elapsed is immaterial.  As the Court emphasized *supra*, our jurisdiction is assessed at the time at which a complaint is filed – not subsequently, after a plaintiff already has filed an action.  Concluding otherwise would render the statutory waiting period a dead letter.

Accordingly, this Court lacks subject-matter jurisdiction to decide Mr. Gaynor's 2010 refund claim.  Despite the fact that Mr. Gaynor arguably paid the 2010 penalty "in full" and filed an administrative refund claim for such payment, he never received a notice of disallowance and the six-month waiting period had not yet elapsed when Mr. Gaynor filed his initial Complaint.[16]

---

[16] Mr. Gaynor, in response to the government's motion to dismiss, also relies upon a non-binding district court opinion from the 1960s to argue that the six-month waiting period can be excused if the IRS is "on notice" of a refund claim.  *See* Pl. Resp. at 3-4 (citing *Stephens v. United States*, 216 F. Supp. 854, 855-856 (E.D. Ark. 1963)).  We note that this Court is not bound by a decision of the United States District Court for the District of Arkansas.  Moreover, this Court surely is not bound by that court's interpretation, long-ago, of a jurisdictional requirement interpreted by *this* Court *and* the Federal Circuit on many occasions to prescribe a six-month waiting period; the latter court's decisions, of course, *are* binding here.  *Strategic Housing Finance Corp.*, 608 F.3d at 1329; *Roberts*, 242 F.3d at 1067.  Furthermore, as the government correctly points out, there are key differences between the facts in *Stephens* and those at issue here.  Most notably, in *Stephens*, although the taxpayer never received a formal notice of disallowance and the six-month statutory waiting period never elapsed, the IRS had sent the plaintiff a letter which the district court construed as a claim denial "by necessary implication when read in connection with the accompanying Internal Revenue Agent's report."  216 F. Supp. at 856.  Here, Mr. Gaynor did not receive any notice of disallowance of his 2010 claim.  In fact, the IRS specifically informed him that it had not yet reached a formal decision on his claim.  Pl. Resp. at 4 n.3; *see Byrne*, 127 Fed. Cl. at 294 ("Plaintiff's participation in the [IRS] appeals process is not relevant to the validity of the IRS's [formal] notice of disallowance[.]").  As such, the Court finds that this key distinction between the present case and *Stephens* is dispositive, even if this Court were to follow *Stephens*.  *See Tidewater, Inc. v. United States*, 2007 WL 3046167, at *3 (E.D. La. Oct.17, 2007) (holding that a communication from the IRS that is unresponsive to the precise claim at issue is not a denial); *Block–Southland Sportswear Co. v. United States*, 1972 WL 455, at *2–

Mr. Gaynor thus has not satisfied the requirements of I.R.C. §§ 6532(a)(1) and 7422(a) for *any* of the tax refunds he seeks.  As such, the Court **DISMISSES** Mr. Gaynor's FAC pursuant to RCFC 12(b)(1).

### D. The Court Lacks Subject-Matter Jurisdiction Over Mr. Gaynor's "Arbitrary And Capricious" Claim

Mr. Gaynor asserts that the civil penalties assessed against him are "arbitrary and capricious."  FAC ¶ 25.  To the extent that this claim is intended to be independent of a tax refund claim – and is instead a challenge to the legality of the IRS's authority to assess the penalties at issue in the first place – such a claim is not within the subject-matter jurisdiction of this Court and also must be dismissed pursuant to RCFC 12(b)(1).

Both this Court and the United States Supreme Court have emphasized that the "'result [of I.R.C. § 7422] is a system in which there is one tribunal for prepayment litigation and another for post-payment litigation, with no room contemplated for a hybrid'" court in which both kinds of claims are heard.  *Skillo v. United States*, 68 Fed. Cl. 734, 741 (2005) (quoting *Flora*, 362 U.S. at 163).  This means that this Court *exclusively* presides over claims which seek refunds of taxes that have been paid, and this Court does not possess jurisdiction over claims for damages flowing from the allegedly "unlawful" collection activities of the IRS.  *Ledford v. United States*, 297 F.3d 1378, 1382 (Fed. Cir. 2002) (discussing I.R.C. § 7433(a)); *see Zolman v. United States*, 2018 WL 1664690, at *2 (Fed. Cl. April 6, 2018) (relying upon *Ledford*, 297 F.3d at 1382, and holding that the Court of Federal Claims does not possess subject-matter jurisdiction to consider damages claims resulting from allegedly unauthorized collection actions of the IRS).  If Mr. Gaynor's claims belong anywhere, in that regard, they must be filed in a United States district court.  *See, e.g.,* I.R.C. §§ 7426(a)(1) (wrongful levy), 7432(a) (civil damages for failure to release lien), and 7433(a) (civil damages for certain unauthorized collection actions); *Ledford*, 297 F.3d at 1382.  We therefore lack subject-matter jurisdiction, pursuant to RCFC 12(b)(1), to consider this claim, as well.[17]

---

3 (E.D.N.C. Nov. 24, 1972) (ambiguous communication from  the IRS regarding refund claim cannot be construed as a denial); *see also Western Intern. Hotels Co. v. United States*, 185 Ct. Cl. 188, 399 F.2d 209, 213 (1968) (concluding that the IRS's statement that refund claim had "been given full consideration" did not constitute a disallowance or allowance because it "fail[ed] to indicate the determination of that consideration").

[17] Mr. Gaynor also urges this Court to hold that the penalties assessed against him for the years 2002 through 2005 are "barred by the statute of limitations[.]"  FAC ¶¶ 23-28.  Even assuming this Court generally has jurisdiction over such a claim, Mr. Gaynor has not met the jurisdictional prerequisites to challenge the penalty assessments against him for all of the reasons explained herein.  Accordingly, this Court may not consider this final claim in Mr. Gaynor's FAC.

*CONCLUSION*

For the foregoing reasons, the government's motion to dismiss Mr. Gaynor's FAC for lack of subject-matter jurisdiction, pursuant to RCFC 12(b)(1), is **GRANTED** and Mr. Gaynor's case, hereby, is **DISMISSED**.  The Clerk is directed to enter judgment accordingly.

It is so **ORDERED.**

s/Matthew H. Solomson
Matthew H. Solomson
Judge